STATE OF MISSOURI, Respondent, v. CHARLES HOUTS, Appellant.

**St. Louis Court of Appeals, May 14, 1889.**

1. **Criminal Law**: LOCAL OPTION. The delivery of a keg of beer to a purchaser and the receipt from him of the purchase money by the defendant, in a county where the "local option law" is in force, is an indictable violation of that law, although the order for the beer had been previously given to the defendant in another county.

2. **Criminal Law**: INDICTMENT. An indictment for selling beer in violation of the local option law is not defective because it fails to state the kind of beer sold, or that it was an intoxicating liquor or beverage containing alcohol, or because it omits to state that the sale was made to a person named, or unknown.

3. **Local Option Law**: INDICTMENT: INTERPRETATION. As a general rule, an indictment which follows the statute is sufficient, and the word "beer," as used in an indictment, means beer in the common acceptation, to-wit, a fermented liquor containing alcohol. Proof by the state that the defendant sold beer makes out a *prima facie* case. If, in fact, the beer sold did not contain alcohol, this should be shown as a matter of defense. An indictment charging the sale of a beverage not generally recognized as an intoxicant would be faulty, unless it averred that the article sold was an intoxicant.

4. **Local Option Law**: WHEN IN FORCE. The defendant cannot be heard to object that the election for the local option law was not held at a proper time, in the face of his record admission that the law was in force at the time and place of its alleged violation. If there was any defect in the proof that the last issue of the paper containing the notice was within ten days of the election, the same was cured by the verdict.

*Appeal from the Scott Circuit Court.*—HON. H. C. O'BRYAN, Judge.

AFFIRMED.

*Rassieur & Schnurmacher*, for the appellant.

The indictment was insufficient to give the court jurisdiction. The act, known as the local option law, requires that the county court should give notice of the special election, by publication in some newspaper published in the county, for four consecutive weeks, the last insertion to be within ten days of the election. Acts of 1887, p. 179, sec. 3. The indictment alleges that the notice was published once a week for four consecutive weeks, the last insertion having been published ten days next before the election. The indictment was also defective in simply charging a sale of beer by the defendant, for the reasons which will be noticed under the second subdivision of the next point. There is nothing in the law making it a misdemeanor to sell beer; the language of the act is that it shall be unlawful to sell intoxicating liquors or beverage containing alcohol. *State v. Emerich*, 87 Mo. 110; 13 Mo. App. 492; *State v. Gabriel*, 88 Mo. 631; *State v. Buckner*, 20 Mo. App. 420. The indictment was also defective in not stating the name of the person to whom the sale was made, either by name or as unknown; the charge is simply that on April 18, 1888, the defendant sold one gallon of beer for the price of $1.50. This is insufficient. *Neales v. State*, 10 Mo. 498; *State v. Hays*, 36, Mo. 80. The court erred in the instructions given. The court charged the jury that if the defendant sold any beer, etc., to find him guilty. Whether or not there had been a sale in Scott county was one of the questions in issue; the expression was used in its technical sense, and the court should have explained to the jury what constituted a sale, within the meaning of the law, and should not have left them to determine the law. *State v. Forsythe*, 89 Mo. 667. The jury was directed to convict the defendant if they found that he sold beer within the county. The local option law, as already observed, makes it a misdemeanor to sell "intoxicating

liquors or beverage containing alcohol." It was there-fore the duty of the court to instruct either that the defendant should be found guilty, if the jury believed he had sold any "intoxicating liquor or beverage con-taining alcohol," or, that he should be found guilty if they believed that he had sold beer, and that the beer sold was an intoxicating liquor or beverage containing alcohol. The court erred in refusing to give the instruc-tion asked by the defendant. Mere delivery of goods does not constitute a sale; on the contrary, a sale may be complete without a delivery. Story on Sales, sec. 300; *Williams v. Gray*, 39 Mo. 201; *Sigerson v. Kah-mann*, 39 Mo. 206. The conviction is not supported by any evidence. There is nowhere in the record any proof that the beer alleged to have been sold was an intoxicating liquor or a beverage containing alcohol. The law does not specifically prohibit the sale of beer. It was therefore incumbent upon the state to bring the article charged within the provisions of the law. There is no legal presumption that beer is intoxicating, cer-tainly no proof that this beer was, or that it contained alcohol; indeed, there was no proof of the materials that composed the beer, and from the record the court cannot tell whether it was lager beer or spruce or root beer.

*Albert De Reign*, for the respondent.

The appellant argues that "the indictment was insufficient to give the court jurisdiction," because it did not allege that the county court gave notice of the special election for four consecutive weeks in some newspaper published in the county, the last insertion being within ten days of the election. There is nothing in the point. The indictment alleges the order as hav-ing been made on the ninth day of November, and

that the election took place on the ninth day of December—thirty days after the date of the order—and that notice of the order was published for four weeks prior to the election ; hence, it is obvious, from an inspection of the indictment, that the last insertion was, in fact, within ten days before the election.    Besides, the objection is untenable for the reason that the defendant admitted that the law had been adopted and was in force and operation at the date of the alleged sale. Though exact words are not used, but words of equivalent import are employed—that is sufficient.    *State v. Watson*, 65 Mo. 115.    The indictment was not defective in simply charging a sale of beer by the defendant. The indictment follows the language of the statute in designating the beverage prohibited from being sold. The local option act provides that the election thereunder shall be held " to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold with the limits of such county."    Acts, 1887, p. 180, sec. 1 ; *State v. Roehn*, 61 Mo. 82 ; *State v. James*, 63 Mo. 570 ; *State v. Adcock*, 65 Mo. 590.    It is not necessary that the indictment should state to whom the sale was made nor the price of the liquor.    *State v. Ladd*, 15 Mo. 430 ; *State v. Miller*, 24 Mo. 532 ; *State v. Fanning*, 38 Mo. 359 ; *State v. Rogers*, 39 Mo. 431.    The defendant also complains that the court instructed the jury to convict him if they found that he sold beer within the county.    He contends that it was the duty of the court to instruct the jury that they should further find that the beer sold was an "intoxicating liquor or beverage containing alcohol," before convicting him, "or, that he should be found guilty if they believed that he had sold beer and that the beer sold was an intoxicating liquor or beverage containing alcohol."    There is nothing meritorious in this complaint of the defendant.    Beer is quite a well-known article of commerce, and its exhilarating and inebriating properties are likewise well known, if not appreciated by a

greater portion of the citizens of our own, as well as other countries.   As an article of trade, beer has as well-defined a meaning as salt, bacon, flour or tobacco. The court did not err in refusing to give the instruction asked by the defendant.   There was no evidence warranting such an instruction.   The entire evidence showed that the sale was consummated, that is, the property passed and the price therefor was received in the territory where the act was unlawful.   In order to authorize said instruction it was incumbent upon the defendant to show that there was an intention to pass the property in the beer to the purchaser in St. Louis.   The intention to pass the property to Holly and others, before actual delivery at Morley, was not manifested by the defendant nor his employers.   The so-called order for the beer, which the defendant claims he received of Holly, was not a contract of sale, but simply a proffer to purchase. The sale was consummated in Scott county, as shown by the defendant's testimony.   The defendant, being employed by the brewery company of St. Louis, received the beer from his employer and delivered it, not as a common carrier, but as the vendor himself, to the purchaser.   In order to defeat this conviction, the defendant must show that there was a delivery of the beer to the purchaser at the brewery in St. Louis.   There was no such evidence.   In fact, the property in the beer never passed out of the possession of the brewery until its delivery at Morley.   While the goods are in the hands of the seller's agent, the contract is executory and either party may impose conditions or recede from it.   According to the defendant's testimony he took the orders of sale upon his principals, carried them to St. Louis, received the liquor in person, returned to Morley with it, delivered it and received pay for it—making a complete sale within the local option limits of Scott county. *Yowell v. State*, 41 Ark. 355; *Berger v. State*, 50 Ark. 20.

BIGGS, J., delivered the opinion of the court.

The defendant was indicted, tried and convicted, for a violation of what is known as the "local option law." The indictment charged that on the eighteenth day of April, 1888, the "local option law" was in force in Scott county, and that the defendant on that day, in violation of said law, sold in Scott county one gallon of beer of the value of one and fifty-one hundredths dollars. The defendant was convicted and a fine of three hundred dollars was assessed against him. He moved for new trial, and this motion having been overruled by the circuit court, he has brought the case to this court for review, and asks us to reverse the judgment and discharge him for the following reasons : *First.* Because the indictment is insufficient. *Second.* Because the court committed error in giving and refusing instructions. *Third.* The judgment of the court is not supported by the evidence.

There is but little conflict in the testimony. It was admitted that on the eighteenth day of April, 1888, the "local option law" was in force in Scott county. The evidence for the state tended to prove that on the eighteenth day of April, 1888, at the town of Morley, in Scott county, the defendant sold, delivered and received the money for, two kegs of beer. It was developed on the cross-examination of the witnesses for the state, that the defendant was engaged in running what is known as a "beer car," for the purpose of delivering beer, for a St. Louis brewery, along the line of railroad running through Scott county ; that a few days prior to the delivery of the beer in Morley, the witness had met the defendant at Bismark, in St. Francois county, and gave the defendant an order for the purchase of *one* keg of beer, which was, afterwards, on the eighteenth of April, delivered by the defendant to witness at Morley, and that the witness paid the defendant for the beer at the time of the delivery. The testimony is not very clear as to the name of the purchaser of the other keg,

and whether it had been sold on a previous order or not, but the evidence tended to prove, that it was paid for at Morley at the time of its delivery. The defendant testified that all the beer, sold by him at Morley, was sold and delivered on orders taken by him outside of Scott county, but he admitted that he received the money for the beer in Scott county, at the time it was delivered.

I. The contention of the defendant's counsel is, that as the evidence shows that the beer was sold on orders given to the defendant outside of Scott county, the subsequent delivery, and the receipt by the defendant of the purchase money in Scott county, would not warrant the defendant's conviction under the local option law.

The errors assigned by the defendant, in the giving and refusing of instructions, involve this question, and its determination will dispose of all matters of error arising on the record, except the defendant's objections to the indictment. The counsel for the defendant asked the court to instruct that the evidence did not show a violation of the law by the defendant. This the court refused to do.

It is very clear to us, that, according to the defendant's own testimony, he was guilty of a violation of law.

When a law has received the sanction of the law-making power of the state, it is the duty of the courts to so construe it, as to carry out, as far as practicable, the intention of the legislature in enacting the law and not by refinements and technical interpretation, to practically nullify it. The intention of this law was to prohibit and abolish the liquor trade in counties adopting it, and if we should so construe the law as to authorize and legalize the scheme devised by the defendant for carrying on a beer traffic in Scott county, the object and intention of the law would be defeated. The defendant was the agent of a brewery company, and engaged in

selling its beer, and if a proper interpretation of the statute would permit him to deliver and receive pay for beer in Scott county, when sold on orders taken or received outside of Scott county, then it is apparent to all, that brewery companies and wholesale liquor dealers could carry on an extensive traffic in counties where the local option law has been adopted, and do so without any legal restraints or restrictions whatever.

It cannot be said that the purchase was actually made in St. Louis, and that the defendant bought the beer at the brewery as the agent of the purchasers, because the defendant was in the employ of the brewery company, and sent out with a car loaded with beer, to be sold and delivered along the line of the railroad. To so decide would be a palpable evasion of the law.

We do not intend to decide that a person living in a county, where the "local option law" is in force, may not buy "intoxicants" for his own use, or for medical purposes to be sold or disposed of under the restrictions of the law, but when such a purchase is made by a person for his own use, it must be made by him in person, or through some third person for him, not in any way interested or employed by the seller. *Yowell v. State*, 41 Ark. 355. This assignment of error must be ruled against the defendant.

II. The sufficiency of the indictment is challenged by the defendant on the grounds : *First.* That it failed to allege the names of the purchasers of the beer. *Second.* That the kind of beer that was sold was not stated, or that it was an intoxicating liquor, or beverage, containing alcohol. There has been some confusion and apparent conflict in the decisions of the supreme court of this state, as to the first objection urged by the defendant. But we think the law is now quite well settled that in an indictment for selling liquor it is sufficient to charge a sale simply, without stating in addition that it was made, to a person named, or unknown.

*State v. Ladd,* 15 Mo. 430; *State v. Miller,* 24 Mo. 532; *State v. Fanning,* 38 Mo. 359; *State v. Rogers,* 39 Mo. 431.

The other objections, made by the defendant to the indictment, present, for solution, a more difficult question. The indictment failed to state the kind of beer sold and that it contained alcohol. "The local option law (sec. 1, Sess. Acts, 1887, p. 180) provides that, upon certain conditions, an election shall be held "to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold," etc. Section 6 provides, that if at such election a majority of the votes are cast against the sale of "intoxicating liquors," "it shall not be *lawful* * * * to directly or indirectly sell * * * any kind of *intoxicating liquors or beverages containing alcohol,*" etc. A literal reading of the two sections produces some uncertainty and doubt as to the true construction to be placed on the statute. By section one (1) it is expressly stated that the words "intoxicating liquors" as used in the statute, include wine and beer.

Counsel for the defendant urge that the indictment should state the kind of beer sold, and that it contained alcohol. We cannot agree to this. The object of the law was to prevent the sale of fermented or spirituous liquors, and not to prevent the sale of a beverage containing no alcohol. By the first section, beer and wine are included in and classified as intoxicating liquors, *i. e.,* liquors containing alcohol; and while the statute fails to designate the kind of beer, yet, when we consider the object of the law we must so construe the word "beer" as used, to mean fermented or malt beer, *i. e.,* beer containing alcohol.

The indictment, in this case, follows the statute, which, as a general rule, is sufficient, and in passing on the sufficiency of the indictment, it must be held that

the word "beer" as used in the indictment means beer in the common and almost universal acceptation of that term, to-wit, a fermented liquor containing alcohol.

Under a proper construction of the statute, we think that proof by the state, that a defendant sold beer, makes out a *prima facie* case. If as a matter of fact the beer sold did not contain alcohol, this should be shown as a matter of defense.

The words "containing alcohol," used in section 6, apply only to the word "beverages" which immediately precedes them. If an indictment charged a violation of this law for a sale of a "beverage" which is not generally recognized as an intoxicant, then the indictment would be faulty, unless it averred that the article sold was an intoxicant. This conclusion necessarily disposes of the defendant's objections.

The defendant also objects to the indictment because it fails to allege that the local option election was held within ten days after the publication of the last issue of the paper containing the notice of the election. There are several reasons why this objection must go for nothing: *First.* The record shows that the defendant admitted that the "law" was in force in Scott county at the time of the alleged sale of beer by him. *Second.* The indictment alleges that the election was ordered on the ninth of November and the election held on the ninth of December following, and that after the election was ordered the notice was published for four weeks prior to the holding of the election. This would necessarily make the publication of the last issue of the paper containing the notice within ten days of the holding of the election. *Third.* The defect (if any) was cured by verdict. (R. S., sec. 1821.)

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concur.