## STATE OF MISSOURI, Respondent, v. GEORGE BURK, Appellant.

**Springfield Court of Appeals, November 10, 1910.**

1. **LOCAL OPTION LAW: Intoxicating Liquor.** Under the Local Option Law the term "intoxicating liquor" embraces any beverage containing alchohol in any quantity whatever, and on a charge of selling intoxicating liquor contrary to the Local Option Law, it would not be necessary to prove that the article sold contained any special per cent of alcohol.

2. **CRIMINAL LAW: Selling Intoxicating Liquor: Information: Instructions.** The information charged defendant with selling "intoxicating liquor, to-wit: beer." The evidence showed that defendant had sold a beverage which contained a small per cent of alcohol, but which was not ordinary beer, although it was called "Piltzner Beer." One instruction to the jury told them to find defendant guilty if they found that he had sold "intoxicating liquor, to-wit: beer." Another instruction required the jury to find that defendant had sold intoxicating liquor. *Held*, that the two instructions, considered together, properly declared the law under the information and evidence in the case. GRAY, J., *dissents*, and holds that the instruction telling the jury to find defendant guilty if they found he sold beer was erroneous under the evidence.

3. ———: **Violating Local Option Law: Information: Alleging Specific Kind of Liquor Sold: Proof.** It is not necessary in charging the violation of the Local Option Law that the information should specify the kind of intoxicating liquor sold. It is sufficient to allege that defendant· sold intoxicating liquor but where the information specifically names the kind of liquor charged to have been sold, the state to secure a conviction, is required to prove the sale of the kind specifically named in the information.

4. **PLEADING: Variance: Use of Videlicet.** The consequences of a variance between the pleading and proof may often be avoided by the use of a *scilicet* or *videlicit*, in those cases where a particular allegation, though not absolutely essential to the matter at issue, is desirable.

5. **CRIMINAL LAW: Violating Local Option Law: Information: Pleading: Variance: Use of Videlicet.** Where an informa-

tion charges defendant with violating the Local Option Law, the charge being that defendant "sold intoxicating liquor, to-wit: beer," the rule of pleading applies that where a general term is used and a particular liquor is named under a *videlicet*, this will excuse the prosecution of strict proof, but the information, having charged the defendant with the sale of beer, the liquor sold, must come within the generic term "beer," and where the proof in such case showed that defendant sold an intoxicating liquor called "Piltzner Beer," but which was not in fact ordinary beer, it was held there was no such material variance between the information and the proof as to justify a reversal of the judgment of conviction, especially in view of the provisions of section 5114, Revised Statutes 1909, and in view of the fact that defendant made no objections to the evidence and there was nothing in the record to indicate that defendant was prejudiced or taken by surprise.

6. ————: Information: Variance: Practice: Arrest of Judgment. A variance between the allegations of the information and the proof is not ground for an arrest of judgment, but must be brought to the attention of the trial court by objections to the introduction of the evidence.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston*, Judge.

Affirmed (*certified to Supreme Court*).

*Parker Potter* and *J. W. Leake* for appellant.

(1) The verdict in this case is not based upon evidence. State v. Martin, 28 Mo. App. 530; Cape Girardeau v. Fisher, 61 Mo. App. 509. (2) The state failed to prove that drinks sold by defendant was an intoxicating liquor. Hilz v. Railroad, 101 Mo. 36. (3) The court having admitted improper, irrelevant and hearsay evidence calculated to greatly prejudice the minds of the jury against the defendant, committed further error by assuming that the beer in question was intoxicating in instruction number one. 1 Words and Phrases, 733; West v. State, 33 Ind. 204; Kurx v. State, 79 Ind. 490; State v. Church, 60 N. W. 144, 9 S. D. 89.

*Archie L. Hilpirt,* Prosecuting Attorney, for respondent.

(1) The court did not err in admitting the testimony by the witness Galbraith as to the statement of the grandson of the defendant made in his presence. Margrave v. Ausmus, 51 Mo. 567; Primm v. Raboteau, 56 Mo. 407; State v. Adams, 108 Mo. 216; State v. Brown, 209 Mo. 419; State v. Priest, 215 Mo. 6. (2) The court committed no error in overruling defendant's demurrer at the close of the state's evidence. A proof of the sale of beer made a case to be decided by the jury. State v. Wittmar, 12 Mo. 407; State v. Lemp, 16 Mo. 389; State v. Houts, 36 Mo. App. 265; State v. Heinz, 45 Mo. App. 412; State v. Besheer, 69 Mo. App. 72; State v. Watts, 101 Mo. App. 661. (3) Instruction one followed the information which was in approved form. State v. Searcy, 39 Mo. App. 393. Instruction number two defined the law as to statements of the defendant. State v. Clow, 131 Mo. App. 559; State v. Tobie, 141 Mo. 561. Instruction number 3 has been approved in the following cases: State v. Nueslein, 25 Mo. 111; State v. Sacre, 141 Mo. 64; State v. Knock, 142 Mo. 515.

NIXON, P. J.—This cause comes to this court upon an appeal by the defendant from a judgment of conviction in the circuit court of Lawrence county, for the unlawful sale of intoxicating liquors. On the 22d day of December, 1909, the prosecuting attorney of Lawrence county filed an information, duly verified, charging that on the 11th day of November, 1907, the Act of the Legislature of the State of Missouri, approved April 5, 1887, and known as the Local Option Law, was duly adopted within the corporate limits of the city of Aurora, in said county, and that while said law was in full force and effect in said city, the defendant did, within the limits of said city and county, "will-

fully and unlawfully sell distilled, fermented and intoxicating liquor, to-wit, one bottle of beer, against the peace and dignity of the state.''

The defendant entered a plea of not guilty and a trial was had before a jury on the 25th day of February, 1910, resulting in a verdict of guilty, and a punishment assessed at a fine of three hundred dollars.

The defendant contends in this court that the evidence was insufficient to authorize the court to submit the case to the jury.

The defendant was running a restaurant in the city of Aurora, and during the fall of 1909, sold to Louis Minor two cases of some kind of a medium beer. It was labeled ''Piltzner Beer.'' The testimony of the witness, Louis Minor, is brief, and we quote therefrom the following: ''Q. Will get you to tell the jury whether or not along about last November you bought any beer from the defendant? A. I bought two cases of some kind of medium beer. Q. What was the name of that beer? A. The label said 'Piltzner Beer.' Q. What did you pay for that? A. I paid him $2.50 a case.'' Cross-examination: ''Q. You say it was marked 'Piltzner Beer?' A. Yes, sir. Q. Have you ever drank any beer before? A. Yes, sir; I guess I have drank that in about a half-dozen states in the Union. Piltzner beer is a heavy beer, and an intoxicating beer, but what I got from Burks was a very light colored beer. Q. Was it intoxicating? A. I wouldn't call it intoxicating. This was a very light beer if it was a beer. If it was a beer it was the lightest that I have ever seen or tasted. Q. Was it an intoxicating beer? A. Whether it is an intoxicating liquor or not, I could not say. I would not call it so unless a person was not use to intoxicants. Q. It doesn't matter whether a person is used to it or not, was it intoxicating? A. I am not a judge of that. I would not say that it was or was not, for anyone that is not a judge of spirits fermenti. My opinion is that

it was not intoxicating. The regular Piltzner beer they claim is not intoxicating.''

The marshal of the city of Aurora testified that on or about the 10th day of November he went to defendant's place for the purpose of making an investigation, and asked the defendant if the drinks he was selling contained alcohol, and that defendant replied that one grade he was selling contained one-half of one per cent alcohol, and the other grade less than two per cent; that he received one shipment of the wrong stuff which was too strong, and that he let the witness, Louis Minor, have two cases from that shipment and kept the other two cases himself.

Dr. Melton testified in behalf of the state that he went to the defendant's place of business and asked him what about the reports that were going around that he was selling beer or whisky; that defendant said ''he was selling something there;'' that one grade contained about one-half of one per cent alcohol and the other about two per cent; that he received a shipment which was too strong, and that he let Louis Minor have two cases of that shipment and kept the other two.

We are satisfied that the testimony was sufficient to take the case to the jury. The witness who made the purchase testified that he could not say whether the so-called Piltzner beer sold by defendant was intoxicating or not, and that he would not call it so unless taken by a person who was not used to intoxicants. This testimony, coupled with the statements of the defendant that what he was selling contained from one-half of one per cent to about two per cent alcohol, made a case for the jury.

Under the Local Option Law, the term ''intoxicating liquor'' embraces any beverage containing alcohol in any quantity whatever, and on a charge of selling intoxicating liquor contrary to the Local Option Law, it would not be necessary to prove that the article sold contained any special per cent of alcohol. [State

v. Martin (Mo.), 129 S. W. 931; State v. Gamma (Mo. App.), 129 S. W. 735.]

It is a well known fact that in localities where the Local Option Law has been adopted, so-called "beverages" are offered for sale, and they are used and become a substitute for the ordinary intoxicating drinks. They seldom contain a large per cent of alcohol, but as large a per cent as the seller believes he dare offer in a mixture and escape the penalty of the Local Option Law. It is also well known that whatever contains alcohol, will, if a sufficient quantity be taken, produce intoxication. The Local Option Law not only strikes at such liquors and mixtures as were recognized as intoxicating liquors but prohibits the sale of beverages of every kind which contain alcohol in any per cent as an ingredient of the mixture.

The trial court gave the following instruction: "You are further instructed that if you believe and find from the evidence beyond a reasonable doubt that the defendant at the county of Lawrence and State of Missouri, and within the corporate limits of the city of Aurora in said county and state, did sell intoxicating liquor, to-wit, beer, to the witness Louis Minor, for the price and sum of $2.50 or for any other sum, you will find the defendant guilty as charged in the information." The court, at defendant's request, also gave the following instruction: "The court instructs the jury that the charge against the defendant is the sale of intoxicating liquors within the corporate limits of the city of Aurora, Lawrence county, Missouri, and that it devolves upon the state to prove this beyond a reasonable doubt, and unless you find and believe from the evidence that the defendant did within one year next before the filing of the information in this cause, sell intoxicating liquors you will find the defendant not guilty."

These two instructions when considered together

as one deliverance of the law to the jury told them that if they believed beyond a reasonable doubt from the evidence that the defendant sold intoxicating liquor, to-wit, beer, to Louis Minor, and that the same was intoxicating, they should find the defendant guilty. By these instructions we think the able trial court properly declared the law of the case.

But it is contended that there was such a variance between the charge in the information and the proof offered in support thereof that the judgment should be reversed. It is urged that the liquor that was charged to have been sold was beer, and that the proof of the sale of any beer other than the ordinary beer would constitute a variance; that the proof of the sale of the so-called Piltzner beer does not support the specific charge in the information because the evidence further showed that Piltzner beer was not ordinary beer, and that although the article sold by defendant was labeled Piltzner beer, it was not a genuine Piltzner beer.

It was not necessary that the information should specify the kind of liquor sold. If the information had made the charge that the defendant sold intoxicating liquor, it would have been sufficient without stating the kind of liquor sold. [State v. Blands, 101 Mo. App. 618, 74 S. W. 3; State v. Kurtz, 64 Mo. App. 123.] The statute in regard to the unlawful sale of intoxicating liquors in cities that have duly adopted the Local Option Law provides (sec. 7243, R. S. 1909) that after the adoption of such law, it shall be unlawful to sell any kind of intoxicating liquor or beverage containing alcohol in any quantity whatever. The charge of a sale of "intoxicating liquor" under this statute, if the information had followed the language of the statute, would have been sufficient. The charge in this information, as we have seen, is that defendant sold "distilled, fermented and intoxicating liquor, to-wit, one bottle of beer." It will be seen that, under the authorities, the word "beer" was wholly an unnecessary al-

legation, and that the substantial part of the information is the charge of a sale of "intoxicating liquor;" that it need not have been named "beer" in the information as it was sufficient to allege that the defendant sold intoxicating liquor. [23 Cyc. 229.] But under a well known rule of pleading, where an information contains unnecessary allegations, they are material if they are descriptive of the identity of what is essential, and in such case they.must be proved as laid and cannot be rejected as surplusage. [22 Ency. Pl. and Prac. 556.] It has been elsewhere held that in case of the charge of a sale of "whisky" in the information or indictment, the state may show "whisky cocktail," and that such proof would not be a variance; but in this state it has been held that where the indictment charged the sale of whisky and the proof showed the sale of alcohol and not whisky, it constituted a material variance. The word "beer" is a generic term, and is so defined in the standard dictionaries. Webster defines it thus: "A fermented liquor made from any malted grain, but commonly from barley malt, with hops or some other substance to impart a bitter flavor. Beer has different names, as small beer, ale, porter, brown stout, lager beer, according to its strength or other qualities. A fermented extract of the roots and other parts of various plants, as spruce, ginger, sassafras, etc." The word "beer," therefore, as used in the information, is beer in the usual acceptation of the term, namely, a fermented liquor. [State v. Houts, 36 Mo. App. 265; State v. Effinger, 44 Mo. App. 81; State v. Watts, 101 Mo. App. l. c. 660, 74 S. W. 376.] The article sold was specifically named in the information in this case as beer. The defendant was specifically notified that he was charged with having sold "one bottle of beer," and the state, under the authorities cited, was bound to prove the sale of beer to secure a conviction.

Attention is directed to the fact that our statute

in regard to local option, section 7238, Revised Statutes 1909, which applies to elections held in counties to determine whether or not liquor shall be sold contains this language stating the object of such elections to be, ''determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of such county lying outside of such corporate limits. . . .'' But section 7239, applicable to elections held in cities of twenty-five hundred inhabitants or more, provides that such elections shall be held ''to determine whether or not spirituous or intoxicating liquors shall be sold within the limits of such city or town.'' It is noticeable that the latter section omits the words of section 7238, ''including wine and beer.'' The decisions heretofore cited were under section 7238 relating to elections under the Local Option Law in counties, and this section gives a statutory definition of ''beer'' as intoxicating; but under section 7239, no such definition of ''beer'' is given.

By the rules of pleading, the consequences of a variance between pleadings and proof may often be avoided by the use of the *scilicet* or *videlicet*. ''Where a particular allegation, though not absolutely essential to the matter in issue, is desirable, the consequences of a variance may often be avoided by making it under a *scilicet* or *videlicet*.'' [22 Ency. Pld. and Prac. 628.] ''If the article sold belongs to the doubtful class, of which the courts are not willing to take judicial notice in respect to their properties, and if it is not named in the statute, the best method is to lay it under a *videlicet;* as for example, 'intoxicating liquor, to-wit, beer.' Here, although beer in general may be of a kind intoxicating or not, so that the word does not necessarily mean beer that is intoxicating, yet the term 'intoxicating liquor' controls.'' [23 Cyc. 230, note 72.] As, under section 7239 upon which this prosecution is based, the beer was not specifically named, the charge in the information was laid under

a *videlicet*. The charge of the kind of liquor being beer, and beer being a generic term, the rule of pleading applies that where a general term is used and a particular liquor is named under a *videlicet,* this will excuse the prosecution of strict proof, unless the matter should become essentially descriptive of the offense. [23 Cyc. 264; Bruguier v. U. S., 46 N. W. 502; U..S. v. Cora, 46 N. W. 503.] Under these principles, as applied to this case, the information having charged the defendant with a sale of beer, the liquor sold must come within the generic term "beer." [23 Cyc. 228.]

The difficulties attending the making of proof to exactly correspond with the allegations of the indictment as they existed at common law induced many states to provide by statute that a variance between the indictment and the proof with respect to the description of any matter or thing named or described in the indictment should not be fatal unless material to the merits and prejudicial to the defendant. Our own statute, section 5114, Revised Statutes 1909. is as follows:

"Whenever on the trial of any felony or misdemeanor, there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof, in the Christian name or surname, or both Christian name and surname, or other description whatsoever, or any person whomsoever therein named or described, or in the name or description of any matter or thing whatsoever therein named or described, or in the ownership of any property named or described therein, such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant."

In the case of State v. Hutchinson, 111 Mo. 1. c. 263, 20 S. W. 34, it was objected that there was a

variance between the name of the owner of the building and the money alleged to have been stolen, as charged in the indictment and proved on the trial. The court, in passing upon this objection, said: "The statute, we think, fully provides for such variances. It says they shall 'not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case, and prejudicial to the defense of the defendant.'" In the case of State v. Crow, 107 Mo. l. c. 345, 17 S. W. 745, the statute again came under review and the Supreme Court said: "Upon the trial the evidence showed that the animal charged to have been stolen was a two-year-old heifer. It is insisted that the variance between the allegation of 'a cow' and the proof of 'a heifer' is fatal to the verdict and judgment. There is nothing in the evidence to indicate that defendant was taken by surprise by reason of the introduction of this evidence, or, if there was a variance, that it was prejudicial to his defense, or material to the merits of the case. The circuit court did not find the variance prejudicial or material, and it was cured by the statute."

In the case under consideration, no objection whatever was made in the trial court that the defendant was taken by surprise by reason of the proof that the state introduced to support the allegation made in the information as to the kind of beer he sold.

Again, a variance between the allegations of the information and the proof is not ground for an arrest of judgment (12 Cyc. 764) but must be brought to the attention of the trial court by objections to the introduction of the evidence. "In actions at law, whether civil or criminal, evidence offered in support of an allegation with which it appears to be variant may and should be objected to as inadmissible, and if it be variant a refusal by the court to exclude it will be erroneous." [22 Ency. Pl. and Prac. 632.]     As we

have stated, no objection was made by the defendant at the trial to any evidence offered by the state as to the kind of liquor sold, and the question of a variance was not brought by any objection to the attention of the trial court, and hence is waived. At any rate there is nothing that occurred at the trial to indicate that the defendant was taken by surprise by reason of the introduction of the evidence, or, if there was a variance, that it was prejudicial to his defense or material to the merits of the case.

At the conclusion of the evidence, the defendant offered an instruction in the nature of a demurrer to the evidence, by which the question is presented to this court whether upon a consideration of the entire scope and meaning of the evidence the appellate court is authorized to declare as a matter of law that the evidence offered by the state was insufficient to prove that defendant was guilty of the sale of intoxicating liquor as charged in the information. The evidence offered by the state was to the effect that the defendant sold to Louis Minor two cases of "some kind of medium beer," labeled Piltzner beer, and received therefor $2.50 per case. The witness, Louis Minor, testified that "Piltzner beer is a heavy beer, and an intoxicating beer, but what I got from Burks was a very light colored beer;" that it was not the regular city Piltzner beer, and he gave it as his opinion that it was not intoxicating "unless a person was not used to intoxicants." The marshall of the city of Aurora testified that on or about the 10th day of November he went to the defendant's place for the purpose of making an investigation and asked the defendant if the drinks he was selling contained alcohol, and the defendant replied that one grade he was selling contained one-half of one per cent alcohol, and the other grade less than two per cent; that he received one shipment of the wrong stuff which was too strong, and that he let the witness, Louis Minor, have two cases

from that shipment, and kept the other two cases himself. Dr. Melton testified in behalf of the state that he went to the defendant's place of business and asked him about the reports that were going around that he was selling whisky or beer; that defendant told him he was selling two grades, one containing about one-half of one per cent alcohol, and the other about two per cent; that he received a shipment that was too strong, and that he let Louis Minor have two cases of that shipment and kept the other two.

Under this evidence, the question under proper instructions was submitted by the court as to whether the article sold by the defendant and called Piltzner beer was a fermented liquor containing alcohol. As the jury are the sole judges of the weight of the evidence and the credibility of the witnesses, they were not bound to take the statements of the witness for the state as conclusive as to whether Piltzner beer sold by the defendant was intoxicating, but were at liberty to take all the facts and circumstances in evidence into consideration in arriving at their conclusion. Whether the species of beer sold in this case was Budweiser beer, Lemp's beer, Milwaukee beer, or Piltzner beer is quite immaterial. The question was one of fact whether it was fermented liquor commonly called beer and containing any quantity of alcohol whatsoever. The evidence was that defendant sold intoxicating liquor, that it was called beer, was sold as beer, was bought as a beverage, was used as beer, and had the spirituous or alcoholic elements of beer, which evidence was sufficient to carry the issue of fact to the jury; and we are not prepared to invade the constitutional province of the jury and as a matter of law declare that under the evidence the so-called Piltzner beer sold by the defendant was not an intoxicating and fermented beer as described in the information. The trial court properly overruled the demurrer to the evidence.

Finding no error in the record, the judgment is affirmed. *Cox, J.,* concurs; *Gray, J.,* dissents, files a separate dissenting opinion and asks that this cause be certified to the Supreme Court, and it is so ordered.

## DISSENTING OPINION.

GRAY, J.—I do not think the judgment in this case should be affirmed. It will be seen from the instruction given in behalf of the state, that the court told the jury if the defendant sold "beer" to find him guilty. If the state's witness had only testified that he bought beer of the defendant, then the instruction would have been proper, as under the statutes of this state and the decisions of the court, the word "beer" in its ordinary sense, means an intoxicating liquor, to-wit: a fermented liquor. [R. S. 1899, sec. 3032; State v. Houts, 36 Mo. App. 265; State v. Heinze, 45 Mo. App. l. c. 411; State v. Watts, 101 Mo. App. l. c. 660, 74 S. W. 376.] The information specifically charged a sale of "beer." The defendant was notified that he was charged with having illegally sold "beer" and the state was bound to prove a sale of "beer" to secure a conviction. [State v. Watts, supra; State v. Houts, supra; State v. Hesner, 55 Ia. 494, 8 N. W. 329; Williams v. State, 35 Ark. 430; Lindsay v. State, 19 Ala. 560; State v. Adams, 51 N. H. 568.]

The first instruction given in behalf of the state submits to the jury the single issue of a sale of "beer," and the triers of the fact were plainly told that if the defendant sold "beer," to convict him. It is my contention that the state's evidence did not show a sale of "beer" as the term is commonly understood, and therefore, the instruction was wrong.

In the majority opinion the court says: "It is a well known fact that in localities where the Local Option Law has been adopted, so-called "beverages" are offered for sale, and they are used and become substi-

tutes for the ordinary intoxicating drinks. The Local Option Law not only strikes at such liquors and mixtures as were recognized as intoxicating liquors, but prohibits the sale of beverages of every kind which contain alcohol in any per cent.'' This language was used by the court because the evidence in this case shows that the article sold by the defendant was not ordinary beer, as defined in our decisions, but was a ''beverage'' sold as a substitute therefor.

Our local option statute, section 7243, recognizes that such beverages would be offered for sale where local option has been adopted, as it reads: ''It shall be unlawful to directly or indirectly sell, give way or barter in any manner whatever, any kind of intoxicating liquors or beverage containing alcohol, in any quantity whatever.'' The question, therefore, in this case is: Is the court authorized, where the information charges the defendant with selling some well known drink, such as beer, whiskey or alcohol, and the evidence shows that he did not sell any of those, but sold some beverage used as a substitute therefor, and the state's testimony shows that it is doubtful whether it is intoxicating, to instruct the jury that if the defendant sold whiskey, beer or alcohol, to convict him, and ignoring the question whether the beverage contained alcohol in any quantity?

As to all such well known drinks as whiskey, brandy, gin, ale and beer, the courts, without proof, acting upon their own knowledge, will take notice that they are intoxicating, and will require no proof of the fact. But as to other beverages not so well known, and of whose character the courts could not take notice, I am of the opinion, as to all such, when the proof shows they were sold instead of the ordinary drinks, then it becomes a question for the jury whether they were intoxicating or whether they contained alcohol. And in my judgment this is a fair construction of the opinions of our courts. [State v. Houts, 36 Mo. App.

265; State v. Watts, 101 Mo. App. 1. c. 660, 74 S. W. 376; State v. Martin, 129 S. W. 931.]

There is no question but what the general rule is as above stated. [Rau v. People, 63 N. Y. 277; Smith v. State, 39 S. E. 294; 113 Ga. 758; State v. Carmody, 91 Pac. 446, 12 L. R. A., N. S. 828; DeGraff v. State, 103 Pac. 538; Donithan v. Commonwealth, 64 S. E. 1050; State v. Piche, 56 Atl. 1052; State v. Gibbs, 123 N. W. 810; Locke v. Commonwealth, 74 S. W. 654; Gourley v. Commonwealth, 131 S. W. 34; Sizemore v. Commonwealth, 131 S. W. 37.]

In the New York case above cited, the court said: "As to such well known beverages as whisky, brandy, gin, ale and strong beer, the courts without proof, will take notice that they are intoxicating. But there are, doubtless, intoxicating beverages which are not so well known, and of whose character the courts could not take notice. As to all such, when one is charged with selling them in violation of law, there must be proof that they are intoxicating before a conviction may be had. The plain and obvious intention of the law is to prohibit the sale of all intoxicating liquors, and when the liquors are not such as are known to the courts to be intoxicating, their character as intoxicating or not must be determined upon competent evidence as a question of fact."

In the late case of DeGraff v. State, supra, decided by the appellate court of Oklahoma, the following plain language is used: "In order that no one may misunderstand our position, and to prevent mistakes in the future, we suggest to county attorneys that the sale of substitutes of prohibited liquors, forbidden and made criminal by section 1 of article 3, constitutes a new and distinct offense, and that in prosecutions based alone upon the sale of such substitutes it may be well questioned if the sale of such substitutes would support an allegation of the sale of the originals. In such prosecutions the wise and safe course to pursue would be

to set out the kind of substitute sold, and bring it within the language of the statute.''

In Smith v. State, supra, the Supreme Court of Georgia disposed of the point in the following language: ''While the words 'lager beer,' in their ordinary use and acceptation, indicate an intoxicating liquor to warrant a conviction of selling liquor of that character, when the proof shows a sale of lager beer and nothing more, yet where, in a given case, there was affirmative testimony to the effect that a liquid which contained not exceeding two per cent of alcohol would not intoxicate, and that the liquid sold did not contain more than two per cent alcohol, it was erroneous to charge generally that all beer was intoxicating.''

In the case of Locke v. Commonwealth, supra, the Kentucky appellate court declares: ''We think that it is a matter of common knowledge that the word 'beer,' when used without a prefix, signifies malt liquor, and that whenever malt liquor is not intended to be expressed by the use of this word, some prefix is used, such as root beer, ginger beer, etc.; but when the word 'beer' is used alone it means either common, lager, or bock beer.''

In State v. Piche, supra, the Supreme Court of Maine declares: ''By the statutes of this state, wine, ale, lager beer, and all other malt liquors, and cider, as well as all distilled spirits, are declared intoxicating. As to liquors which fall within any of the enumerated classes, there is no question but that they are intoxicating. The statute so declares them. The same section provides that the above enumeration shall not prevent any other pure or mixed liquors from being considered intoxicating. Whether such liquors are intoxicating is a question of fact, to be proved by any competent evidence, the same as any other question of fact, and the force and effect of such evidence are for the jury to determine.''

In State v. Carmody, supra, the Supreme Court of Oregon, after reviewing the authorities, says: ''In a number of decisions it is held that the word 'beer' is a generic term, including both a class of alcoholic liquors and a class of non-intoxicating beverages, such as 'root beer,' 'ginger beer,' 'spruce beer,' and the like; and therefore it cannot be said, in its ordinary meaning, to imply an intoxicating drink, unless such import has been given it either by statute or by decisions of the courts. On the contrary, the preponderance of authority is to the effect that, when the word 'beer' is used, without any restriction or qualification, it denotes an intoxicating malt liquor; that, when thus occurring in an indictment, or in the evidence, it is presumed to include only that species of beverage. As long as laws for licensing the sale of intoxicating liquors have existed, brandy, whiskey, gin, rum, and other alcoholic liquids have been held to be intoxicating, simply because it is within the common knowledge and ordinary understanding that they are intoxicating. Beer is a fermented liquor made from any malted grain, with hops and other bitter flavoring matter. It is true that to a limited extent there are other kinds of beer, such as 'spruce beer,' 'ginger beer,' etc. When beer is called for at the bar, the bartender would know at once, from the common use of the word, that strong beer—a spirituous or intoxicating beer—was wanted; and if any other kind was wanted, the word would be qualified. When, therefore, the word 'beer' is used in court by a witness, the court will take judicial notice that it means a malt and an intoxicating liquor.''

From all of the above decisions, the rule is established that where the state's testimony shows a sale of beer and nothing further, the court is authorized to tell the jury that beer is an intoxicating liquor, and if the defendant sold the same, to convict him. But when the state's testimony shows that beer was

not sold, but some substitute therefor, then the court is not justified in telling the jury if the defendant sold "beer," to convict him. The point I have tried to make will be made clear by an examination of the above authorities.

The question of variance is not the only question in the case. Under the evidence it is a question of fact whether the beverage sold to the states' witness contained alcohol in any per cent whatever. There is a declaration made by the defendant that he handled two brands, one containing one-half of one per cent alcohol, and the other about two per cent. This was only a declaration, and the truth of it was a question for the jury and not for the court.

While I do not concur in all the court has said about the question of variance in this case, I do not dissent from that part of the opinion of the majority of the court. The question of variance is one of difference between the allegation and the proof and does not apply to a bad instruction. In this case the court, instead of submitting the question to the jury whether the beverage contained alcohol in any quantity, told the jury in plain words to find the defendant guilty if he sold beer, while all the testimony showed that "beer" was not sold.

I believe the opinion of the majority is in conflict with the cases of State v. Houts, supra; State v. Watts, supra, and State v. Martin, supra, and therefore, ask that the case be certified to the Supreme Court for final decision.